IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Terrance Griffin, ) | C/A No. 0:13-2694-MGL-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Elizabeth Holcomb; Rachel Laddaga; Grealin ) | |
| Frazier; William Brightharp; John/Jane Doe, ) | |
| *Doctor Lieber CI*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The plaintiff, Terrance Griffin, a self-represented state prisoner, filed this civil rights matter pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the motion for summary judgment filed by Defendants Holcomb, Frazier, and Brightharp, and the motion to dismiss or, in the alternative, for summary judgment filed by Defendant Laddaga. (ECF Nos. 43 & 55.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Griffin of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motions. (ECF Nos. 44 & 57.) Griffin filed responses in opposition and was later permitted to supplement his response. (ECF Nos. 60, 67, & 112.) Having carefully considered the

parties' submissions and the applicable law, the court concludes that the defendants' motions should be granted.[1]

## BACKGROUND

Griffin alleges that on January 25, 2012 at approximately 7:00 pm while housed in the Special Management Unit ("SMU"), his left shoulder became dislocated. He alleges that he informed unnamed SMU officers of his injury and asked them to contact the medical department. According to Griffin, the officers contacted the medical department but informed Griffin that the medical department had stated that Griffin's injury was not an emergency. Griffin alleges that he was examined by Defendant Laddaga—a registered nurse—in the SMU at approximately 2:30 a.m. on January 26, 2014 after she had checked on other inmates on her sick call list. At that time, according to Griffin, Laddaga determined that Griffin's shoulder was dislocated, but "did nothing" and instead informed Griffin that a doctor would be notified in the morning. Griffin alleges that in the morning he was being escorted to receive treatment when Defendant Frazier—a Sergeant assigned to the SMU—directed that Griffin be returned to his cell because he had already received treatment. Griffin states that he was transported to the Trident Medical Center later that afternoon at approximately 2:00 p.m. where he received medical treatment.

Griffin acknowledges that in March and May of 2012 he received follow-up care from an orthopedist and a therapist who recommended physical therapy to increase Griffin's strength and

---

[1] It appears that Defendants John/Jane Doe, *Doctor Lieber CI*, were never served with process. Accordingly, the court recommends that these defendants be dismissed from this action without prejudice. See Fed. R. Civ. P. 4(m). Although Griffin filed a motion to amend his Complaint to identify these defendants after the expiration of the deadline for service of process and after the expiration of the deadline to amend pleadings pursuant to the court's Scheduling Order, the court denied this motion as futile, as the allegations raised by Griffin against the John Doe defendants were insufficient to show deliberate indifference as a matter of law. (See ECF No. 64.)



range of motion and to prevent future dislocations, and Griffin was provided with a prescription for a blue theraband. Griffin alleges that while he was housed in SMU, Defendants Brightharp and Holcomb discontinued his therapy sessions and informed him that he could resume his therapy sessions when he returned to general population. Griffin alleges that, as a result, his shoulder continues to ache and is stiff. Griffin seeks monetary damages. (Compl., ECF No. 1 at 3-5.)

## DISCUSSION

### A.     Applicable Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

The court observes that it is required to liberally construe *pro se* complaints. Id. Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, id.; Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972). When a federal



court is evaluating a *pro se* complaint, the plaintiff's factual allegations are assumed to be true. Erickson, 551 U.S. at 93 (citing Twombly, 550 U.S. 544, 555-56 (2007)). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999), construct the plaintiff's legal arguments for him, Small v. Endicott, 998 F.2d 411 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Additionally, summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

Id. at 248.  The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.

**B.     Exhaustion of Administrative Remedies**

In this case, Defendants Holcomb, Frazier, and Brightharp ("SCDC defendants") argue that Griffin has failed to exhaust his administrative remedies with regard to his claims against them.  A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a).  Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings.  See Booth v. Churner, 532 U.S. 731, 740-41 (2001).  To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review.  See generally id.  Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective.  Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739).  Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*."  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286



F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Pursuant to South Carolina Department of Corrections policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance." Moreover, review from the South Carolina Administrative Law Court ("ALC") is generally part of the available administrative remedies an inmate must exhaust.[2] See Furtick v. S.C. Dep't of Corr., 649 S.E.2d 35, 38 (S.C. 2007) (reaffirming that "the ALC has jurisdiction over all inmate grievance appeals that have been properly filed") (citing Slezak v. S.C. Dep't of Corr., 605 S.E.2d 506 (S.C. 2004)).

The SCDC defendants argue that while Griffin filed Step 1 and Step 2 grievances with regard to his claims, he failed to appeal any grievance to the Administrative Law Court. In response to the defendants' assertions, Griffin argues that he is not required to proceed beyond filing a Step 2 grievance. (See Pl.'s Resp. Opp'n Mot. Summ. J., ECF No. 60 at 7.)

---

[2] South Carolina case law has established certain exceptions not applicable here. See Howard v. S.C. Dep't of Corr., 733 S.E.2d 211, 215-18 (S.C. 2012) (interpreting a post-Furtick statutory amendment to S.C. Code Ann. § 1-23-600(D) and holding that the ALC lacked jurisdiction over an inmate's appeal involving the loss of the opportunity to earn sentence-related credits and no state-created property or liberty interest); Travelscape, LLC v. S.C. Dep't of Rev., 705 S.E.2d 28, 38-39 & n.10 (S.C. 2011) (stating that the ALC is without jurisdiction to hear facial challenges to the constitutionality of a regulation or statute but may rule on as-applied challenges); Howard, 399 733 S.E.2d at 218 (applying the holding in Travelscape, LLC to challenges to prison policies).



The Administrative Law Court is a statutorily created hybrid. Its enabling legislation provides that the Administrative Law Court is both a court of record and an executive branch agency. See S.C. Code Ann. § 1-23-500 (stating that the Administrative Law Court "is an agency and a court of record within the executive branch of the government of this State"). Thus, Administrative Law Court is unquestionably part of the executive, not judicial, branch of state government. As such, it provides an administrative—not judicial—remedy. Thus, the Administrative Law Court is part of the available *administrative* remedies that an inmate must exhaust. See 42 U.S.C. § 1997e(a) (requiring a prisoner to exhaust "such administrative remedies as are available").

It does not appear that Griffin appealed the grievances regarding the claims raised against the SCDC defendants in the instant Complaint to the Administrative Law Court. However, even if Griffin were to have properly exhausted his administrative remedies, the SCDC defendants are nonetheless entitled to summary judgment for the reasons stated below.

**C.     Deliberate Indifference—Medical Treatment**

As more fully described above, Griffin appears to allege two instances of deliberate indifference to his medical needs: that he was initially denied medical care when his shoulder became dislocated and that he was not allowed to complete physical therapy following treatment of his shoulder. To establish a claim under the Eighth Amendment for deliberate indifference, an inmate must establish two requirements: (1) a sufficiently serious deprivation occurred, resulting "in the denial of the minimal civilized measure of life's necessities," and (2) the prison official had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In the medical context, an inmate "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241



(4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  With regard to the objective prong, a " 'serious . . . medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " Iko, 535 F.3d at 241 (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).  With regard to the subjective prong, a prison official is deliberately indifferent if he has actual knowledge of and disregards "the risk posed by the serious medical needs of the inmate." Iko, 535 F.3d at 241 (citing Farmer, 511 U.S. at 837).  To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105.  To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).  Mere negligence, malpractice, or incorrect diagnosis is not actionable under 42 U.S.C. § 1983.  See Estelle, 429 U.S. at 106.  While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice.  Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988).  "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted) (alterations in original); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).



Griffin's allegations with regard to Defendant Laddaga appear to be that she did not treat him immediately upon her arrival at the SMU and that her treatment was insufficient in that she "did nothing" and instead informed Griffin that a doctor would be notified in the morning. In response to Griffin's allegations, Defendant Laddaga has presented affidavit testimony as well as Griffin's medical records. Laddaga avers that she assessed Griffin at approximately 2:43 a.m. on January 26, 2012 and that, at that time, he "did not present to [Laddaga] in need of emergent care requiring an immediate transfer to the Hospital." (Laddaga Aff. ¶¶ 8-9, ECF No. 55-1 at 1-2.) Review of the medical records reveals that at the time of his assessment by Nurses Laddaga and Parker (who is not a party in this action) Griffin stated that he was in pain, but that there were no signs or symptoms of distress noted. (See Med. Summary, Laddaga Aff. Ex A, ECF No. 55-1 at 4.) It was further noted that Griffin's left arm appeared to be "hanging" lower than his right arm, but that Griffin refused to move his left arm and it was difficult to fully assess the left arm due to Griffin being handcuffed. (Id.) According to the medical records, Nurse Parker attempted to place Griffin's left arm in a sling, but Griffin refused, stating that a sling was not the proper treatment and that the proper treatment was to send him to the hospital. (Id.) Griffin was instructed to return to his cell and informed that a doctor would be notified in the morning. (Id.) When Griffin was reassessed at approximately 11:44 in the morning, the medical records indicate Griffin's shoulder appeared to be dislocated and Griffin was transported to the Trident Medical Center. (Id. at 4-5.)

Griffin's allegations against Defendant Frazier appear to stem from Defendant Frazier's allegedly directing officers to return Griffin to his cell when Griffin was on his way to the hospital based upon Frazier's apparent belief that Griffin had already received treatment for his shoulder. As an initial matter, Defendant Frazier is a non-medical individual. To establish a claim for denial



of medical care against non-medical personnel, a prisoner must show that they failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct.  Miltier, 896 F.2d at 854.  Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment which the medical personnel deemed necessary and appropriate for the prisoner.  See id.  In response to Griffin's allegations, Defendant Frazier has provided affidavit testimony in which he specifically denies that he delayed or interfered with Griffin's treatment.  (Frazier Aff. ¶ 7, ECF No. 43-13 at 2.)  He further avers, however, that if he gave a directive for Griffin to be returned to his cell, it was because he was directed to do so by a supervisor or a nurse due to a lack of required security needed to transport Griffin to the hospital.  (Id. ¶ 8.)

Griffin alleges generally that, following his treatment at Trident Medical Center, Defendants Brightharp, Captain of the SMU, and Defendant Holcomb, a nurse practitioner, "discontinued" Griffin's therapy sessions.  In response to Griffin's allegations, the defendants have provided affidavit testimony from Defendants Brightharp and Holcomb, as well as affidavit testimony from Dr. David Edwin Koon, Jr., an orthopedist at the Kirkland Correctional Institute orthopedic clinic on March 7, 2012 who made recommendations regarding Griffin's care.  In his affidavit, Dr. Koon recounts his recommendation after Griffin was examined:  "physical therapy for range of motion, strengthening of [Griffin's] left upper extremity, Naprosyn for pain relief and inflammation, and to follow-up in two months for clinical re-check.  A physical therapist recommended a prescription for "strengthening using blue band" and to exercise daily for one hour using [the] blue theraband for three months."  (Koon Aff. ¶ 7, ECF No. 43-7 at 2.)  Defendant Brightharp testifies, however, that



Griffin was not allowed to have his prescribed band for therapy in his cell while housed in the SMU per SCDC Policy No. OP-22.12. (Brightharp Aff. ¶ 10, ECF No. 43-12 at 2; see also SCDC Policy No. OP-22-12, ECF No. 43-8.) Dr. Koon avers that, at the time he made his recommendations, he "cannot recall whether or not [he] was aware if [Griffin] was, or was not, residing in the S.M.U.," but that his recommendations are not based on an inmate's security level. (Koon Aff. ¶ 8, ECF No. 43-7 at 2.) Dr. Koon further testifies, however, that the recommended physical therapy "could be accomplished as a home exercise program in [Griffin's] cell and did not require supervised therapy sessions with a physical therapist." (Id. ¶ 9, ECF No. 43-7 at 2-3.) Dr. Koon avers that it is up to the discretion and judgment of Nurse Holcomb as to the appropriateness of his recommendations based on Griffin's individual security concerns, and that he does not find it medically inappropriate to wait until Griffin was released from SMU before implementing the theraband therapy, as those recommendations were made to prevent future shoulder instability and not necessarily to alleviate Griffin's current shoulder injury. (Id. ¶¶ 10-11, ECF No. 43-7 at 3.) Nurse Holcomb avers that, following Griffin's orthopedic appointment at Kirkland, she ordered the medication that had been prescribed for Griffin and completed the consultation for orthopedic follow-up in two months, but did not order the prescribed theraband as this item was prohibited in the SMU where Griffin resided at the time. (Holcomb Aff. ¶ 16, ECF No. 43-4 at 5.) Holcomb further avers that following Griffin's May 16, 2012 orthopedic appointment, she changed Griffin's medications as prescribed and completed a follow-up consultation, but noted that as Griffin still resided in SMU, he could not complete the physical therapy. (Id. ¶ 18, ECF No. 43-4 at 6.) On July 5, 2012, Griffin filed a request to staff stating that he was out of SMU and wanted to complete his band therapy, and Holcomb avers that she sent Griffin an Order to Report for Monday through Friday band therapy July 5, 2012

Page 11 of 16

through August 5, 2012. (Id. ¶ 20.) Medical records indicate that Griffin reported to and completed band therapy sessions on July 5 and July 9, but that he was not able to complete his therapy session on July 14 because of a security concern due to a shortness of staff. (Holcomb Aff. ¶ 21, ECF No. 43-4 at 7; see also Med. Summary, ECF No. 43-3 at 9.) The medical records also reveal multiple instances where Griffin did not show up for scheduled physical therapy sessions. (Med. Summary, ECF No. 43-3 at 10.) Notably, Holcomb testifies, and the record supports, that Griffin did not report any shoulder pain to the medical staff after his initial injury prior to his March 7, 2012 orthopedic consult, nor did he complain of shoulder pain during the time periods between consultations until June 26, 2012 when he requested band therapy for his shoulder. (Holcomb Aff. ¶¶ 15, 17, 19-21, 25; ECF No. 43-4 at 5-7.) Following this request and his subsequent release from SMU, Griffin began physical therapy sessions with no complications or complaints, and did not complain to the medical staff of any shoulder pain again until May 17, 2013. (Id. ¶¶ 21, 24-25, ECF No. 43-4 at 7.)

As stated above, to establish a claim under the Eighth Amendment for deliberate indifference to medical needs, Griffin must establish that a defendant had a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Griffin must show that each defendant (1) had *actual* knowledge (2) of a *substantial* risk of *serious* harm to Griffin and (3) that the defendant *disregarded* that substantial risk. Id. at 837; see also Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (stating that liability under this standard requires that the evidence show that the official in question: (1) "subjectively recognized a substantial risk of harm;" and (2) "subjectively recognized that his actions were inappropriate in light of that risk") (internal quotations omitted). Specifically, in the medical context, an inmate must show both actual knowledge on the part of the defendant of the risk of harm to the inmate and that the defendant "recognized that his actions were insufficient



to mitigate the risk of harm to the inmate arising from his medical needs." Iko, 535 F.3d at 241 (internal quotation marks and citation omitted). "It is not enough that [the defendants] *should have* recognized [a substantial risk of harm]; they actually must have perceived the risk." Parrish, 372 F.3d at 303 (emphasis in original). Likewise, "it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient." Id. (emphasis in original).

On the record presented, no reasonable jury could find that any of the defendants had a sufficiently culpable state of mind such that they were deliberately indifferent to Griffin's medical needs. It is undisputed that Griffin was seen by the medical department staff on multiple occasions during the hours prior to being transported to the Trident Medical Center, as well as multiple occasions for orthopedic consults following his shoulder injury. During several of these medical encounters, it is also undisputed that Griffin was evaluated, received medication, and was provided physical therapy. While Griffin appears to argue that his initial shoulder injury was visible to Defendants Frazier and Laddaga and thus they should have provided treatment sooner, this is insufficient to prove that the defendants had the culpable state of mind necessary to rise to the level of deliberate indifference. See Farmer, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). The law is clear that a defendant's response to a perceived risk must be more than merely negligent or simply unreasonable to rise to the level of deliberate indifference. See Parrish, 372 F.3d at 307 ("If a negligent response were sufficient to show deliberate indifference, the Supreme Court's explicit decision in Farmer to incorporate the subjective recklessness standard of culpability from the criminal law would be



effectively negated."); see also Dias v. Vose, 865 F. Supp. 53, 59 (D. Mass. 1994) (finding that a physician's failure to send an inmate to the hospital, while possibly negligent, was not deliberate indifference to a serious medical need, even though the delay in appendicitis surgery caused complications, absent a showing that the physician acted with a culpable state of mind and intention to inflict pain), aff'd 50 F.3d 1 (1st Cir. 1995). Moreover, as stated above, Griffin does not have a claim against the defendants merely because he disagrees with the course of treatment he received. See Jackson, 846 F.2d at 817; Nelson, 603 F.3d at 449. Additionally, with regard to Griffin's alleged denial of physical therapy sessions, the defendants have provided affidavit testimony that provides unrefuted security reasons for the denial of Griffin's prescribed tharaband, while still showing through testimony and medical records that Griffin was provided with regular orthopedic visits and then was approved for theraband sessions once he was no longer housed in SMU. Accordingly, on the record presented, no reasonable jury could find that the defendants had actual knowledge of a substantial risk of harm to Griffin and disregarded that risk.

To the extent that Griffin's claims allege negligence or medical malpractice, they are not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n.3 (1986); Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) ("The district court properly held that Daniels bars an action under § 1983 for negligent conduct."); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir. 1987); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Accordingly, the defendants are entitled to summary judgment.

**D.      Other Claims**

To the extent Griffin is attempting to assert any other claims, his Complaint fails to state a plausible claim for relief.  See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009).

## RECOMMENDATION

For the above reasons, the court recommends that the defendants' motions be granted.  (ECF Nos. 43 & 55.)

November 12, 2014                                                  Paige J. Gossett
Columbia, South Carolina                                      UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).